CAMCO, INC., Plaintiff-Appellee, v. CAROL LOWERY, Defendant-Appellant.

First District (5th Division)   No. 1—03—0144

Opinion filed November 18, 2005.

Brett C. Zeeb and Carlos Ramirez, both of Legal Assistance Foundation of Metropolitan Chicago, of Chicago, for appellant.

Sanford Kahn, Ltd., of Chicago (Richard W. Christoff, of counsel), for appellee.

JUSTICE NEVILLE delivered the opinion of the court:

Camco, Inc. (Camco), the plaintiff, filed a forcible entry and detainer action against the defendant, Carol Lowery. The parties filed cross-motions for summary judgment and the trial court denied Ms. Lowery's motion and granted Camco's motion for summary judgment. Ms. Lowery appeals from the trial court's December 5, 2002, order granting Camco's motion and entering a judgment for possession of her apartment.

## BACKGROUND

Camco is the agent and manager for Van Buren Park Apartments (Van Buren), a privately owned housing project that is subsidized by the United States Department of Housing and Urban Development (HUD) under the "Section 8 New Construction Program" (hereinafter Section 8). See 42 U.S.C. § 1437d(h) (2000). HUD has an approved lease for participants in its Section 8 program, and approved the leases that Van Buren entered into with its Section 8 tenants. On December 23, 1999, Van Buren entered into a lease with Ms. Lowery, a Section 8 tenant, for Unit 1301A, located at 2120 West Gladys (Unit 1301A). The lease provided that Ms. Lowery, as head of household, and her

two sons, Prenis Lowery and A.L. (a minor and member of Ms. Lowery's household),[1] were approved to reside in Unit 1301A.

On April 26, 2002, Camco served Ms. Lowery with a notice of termination of tenancy. The notice stated that Ms. Lowery's tenancy was being terminated for material noncompliance with the terms of her lease with Van Buren. The notice stated that Ms. Lowery violated her lease on March 27, 2002, when the Chicago police raided her unit and arrested her son, A.L., for selling and possessing illegal drugs in violation of paragraphs 13(b), 13(c), 23(b), and 24 of the lease. Paragraph 13(b) of the lease provides that the tenant shall not use the unit for unlawful purposes. In paragraph 13(c) of the lease, the tenant agrees not to:

"c. engage in or permit unlawful activities in the unit, in the common areas or on the project grounds;

1. Tenant, any member of the Tenant's household, or guest or other person under the Tenant's control shall not engage in criminal activity, including drug related criminal activity, on or off project premises. Drug related criminal activity means the illegal manufacture, sale distribution, use of possession with intent to manufacture, sell, distribute, or use of a controlled substance (as defined in section 102 of the Controlled Substances Act {21 U.S.C. 802}).

2. Tenant, any member of the Tenant's household, or a guest or other person under the Tenant's control **shall not engage in any act intended to facilitate criminal activity**, including drug-related criminal activity, on or off project premises.

3. Tenant or members of the household **will not permit the dwelling unit to be used for, or to facilitate, criminal activity**, including drug-related criminal activity, on or off project premises.

4. Tenant or members of the household will not engage in the manufacture, sale, or distribution of illegal drugs at any location, whether on or off project premises or otherwise.

\*\*\*

6. **VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL VIOLATION OF THE LEASE AND GOOD CAUSE FOR TERMINATION OF TENANCY**. A single violation of any of the provisions of this clause shall be deemed a serious violation and a material noncompliance with this Agreement. It is understood and agreed that a single viola-

---

[1]A.L.'s initials will be used throughout this opinion because of the confidentiality provisions in the Juvenile Court Act of 1987. 705 ILCS 405/1—5(6), 1—8 (West 2004).

tion shall be good cause for termination of this Agreement. Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be by a preponderance of the evidence." (Emphasis in original.)

Paragraph 23(b) of the lease provides that the landlord may only terminate the lease for: (1) the tenant's material noncompliance with the terms of the agreement; (2) the tenant's material failure to carry out obligations under any state landlord and tenant act; or (3) criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by other tenants, or any drug-related criminal activity on or near the premises engaged in by the tenant, any member of the tenant's household, or any guest or person under the tenant's control. Finally, paragraph 24 of the lease provides that the tenant shall not undertake, or permit his or her family or guests to engage in, any hazardous acts or do anything that will increase the project's premiums. Ms. Lowery was advised in the notice that if she remained in the leased unit after May 14, 2002, the date specified for termination, the landlord would terminate her tenancy by bringing a judicial action.

On May 30, 2002, Camco filed a forcible entry and detainer action against Ms. Lowery, and the complaint alleged that she breached paragraphs 13(b), 13(c), 23(b), and 24 of the lease. After filing the complaint, Camco initiated discovery. Camco served Chicago police tactical officer Jesse Sandoval (Officer Sandoval) with a subpoena which set a date for his discovery deposition. Camco also served a subpoena *duces tecum* on the Illinois State Police, Division of Forensic Services, and received an affidavit in lieu of court appearance and a laboratory report with an analysis of the contraband found in Unit 1301A on March 27, 2002.

Officer Sandoval's discovery deposition was set for August 29, 2002. At the deposition, Officer Sandoval produced a copy of A.L.'s arrest report and testified that he, his partner, Officer Frenzy, and their sergeant, set up surveillance at Unit 1301A of the Van Buren Apartments. According to Officer Sandoval, when their sergeant witnessed what appeared to be a narcotics transaction occurring at the front door of Unit 1301A, he instructed Officers Sandoval and Frenzy to approach Unit 1301A. Once the officers arrived at Unit 1301A, they detained an adult male who threw several bags of a substance believed to be cannabis to the ground. Shortly thereafter, the police placed the adult male under arrest and knocked on the door for Unit 1301A. Officer Sandoval testified that A.L. answered the door with a large bag in his hand, which Officer Sandoval believed contained suspected cannabis. A.L. was taken into custody and the officers confiscated what

they believed to be additional suspected contraband inside an open Igloo cooler in Unit 1301A. Officer Sandoval testified that the recovered substances were sent to the lab for analysis and tested positive for cannabis. During the deposition, Officer Sandoval identified A.L. by using his name, rather than his initials, and testified that he was found guilty of felony possession of cannabis.

On August 29, 2002, Ms. Lowery filed a motion for summary judgment alleging that she did not violate her lease and that she did not know or have reason to know of A.L.'s conduct. In her motion, Ms. Lowery also maintained: (1) that she did not violate paragraph 13(b) or 13(c) of the lease because she did not use her apartment for any unlawful purpose and did not permit A.L. to engage in unlawful activity or use or sell drugs; (2) that she did not violate paragraph 23(b) of the lease because she did not engage in any criminal activity and was at work when A.L. was arrested, so she was unable to control his actions; and (3) that she did not violate paragraph 24 of the lease because she did not engage in any hazardous acts and did not permit A.L. to engage in any hazardous acts. Finally, the allegations in Ms. Lowery's motion for summary judgment were supported by her affidavit and a memorandum.

On October 7, 2002, Camco filed its motion for summary judgment alleging: (1) that Ms. Lowery occupied Unit 1301A under a written rental agreement with Camco; (2) that Ms. Lowery's son, A.L., also occupied Unit 1301A; (3) that on March 27, 2002, A.L. was arrested in Unit 1301A by the Chicago police and charged with possession and delivery of illegal drugs; (4) that the substances confiscated from A.L. tested positive for cannabis; and (5) that Ms. Lowery was served with a notice of termination of tenancy as a result of the possession and sale of illegal drugs by A.L., a member of her household. Camco maintained in its motion for summary judgment that, according to the lease and federal law, the possession and sale of cannabis on the premises by Ms. Lowery's son, A.L., constituted grounds for termination of her tenancy. Camco's motion for summary judgment was supported by the certification of Ceola Johnson (Van Buren's property manager), by a memorandum, and by three exhibits: (1) the transcript from Officer Sandoval's deposition; (2) a March 27, 2002, arrest report; and (3) the affidavit and lab report of Mohammad Sarwar, forensic chemist for the Illinois State Police, Division of Forensic Services.

On October 29, 2002, Ms. Lowery filed a motion to strike the three exhibits appended to Camco's motion, which she referred to as law enforcement testimony (Officer Sandoval's deposition transcript) and law enforcement records (the arrest report and the lab report). Ms. Lowery argued that the Juvenile Court Act of 1987 (Act) provides

that law enforcement records relating to minors who have been arrested or taken into custody before their seventeenth birthday shall be kept confidential (705 ILCS 405/1—7(A) (West 2004)), and that law enforcement officers may not disclose the identity of a minor when releasing information to the general public related to the arrest, investigation or disposition of any case involving a minor. 705 ILCS 405/1—7(E) (West 2004). Therefore, Ms. Lowery argued that all the evidence in the exhibits produced by Camco to support its motion for summary judgment was inadmissible under the Act and that Camco was prohibited from using this evidence in support of its motion for summary judgment. 705 ILCS 405/1—1 *et seq.* (West 2004).

On December 5, 2002, a hearing was held on Ms. Lowery's motion to strike and on the parties' cross-motions for summary judgment. The trial court found that a law enforcement officer was not releasing information to the general public when testifying in a court proceeding. Then the circuit court denied Ms. Lowery's motion to strike Camco's law enforcement testimony and records; denied Ms. Lowery's motion for summary judgment; and granted Camco's motion for summary judgment. On January 6, 2003, Ms. Lowery filed a notice of appeal. On January 29, 2003, the trial court granted Ms. Lowery's motion for a stay of enforcement of Camco's judgment for possession pending this appeal. Finally, Ms. Lowery presents two issues for review in this appeal: (1) whether the law enforcement testimony and records disclosing the identity of A.L., a minor, and used by Camco in support of its motion for summary judgment should be excluded under the Act; and (2) whether she and her family can be evicted for the actions of her 12-year-old son, when the lease prohibits the leaseholder from engaging in or permitting criminal activity, which she did not participate in or permit.

## ANALYSIS

The first issue we must address in this appeal is whether the trial court erred when it denied Ms. Lowery's motion to strike the three documents appended as exhibits to Camco's motion for summary judgment: (1) Officer Sandoval's deposition transcript; (2) the March 27, 2002, arrest report; and (3) the forensic chemist's affidavit and lab report. Ms. Lowery argues that the law enforcement officer's testimony and the records containing evidence which relates to A.L.'s arrest should have been deemed inadmissible and should not have been considered by the trial court when deciding Camco's motion for summary judgment because it disclosed A.L.'s identity and, therefore, violated the Act. 705 ILCS 405/1—1 *et seq.* (West 2004). Ms. Lowery also argues that Camco should not have had A.L.'s arrest report or lab

report in its possession because Camco and its agents are not law enforcement agencies or officials entitled to have a juvenile's records in its possession. 705 ILCS 405/1—8(A) (West 2004). Camco contends that the Act is inapplicable in this case because there is no evidence that A.L.'s March 27, 2002, arrest report, the forensic chemist's affidavit and lab report, or Officer Sandoval's deposition transcript was released to the general public.

## THE MOTION TO STRIKE

■ By denying Ms. Lowery's motion to strike the evidence contained in Camco's exhibits, the trial court made an evidentiary ruling. Generally, an abuse of discretion standard of review applies when this court reviews a trial court's evidentiary rulings. *Jackson v. Graham*, 323 Ill. App. 3d 766, 773 (2001). However, because our review of the trial court's ruling on a motion to strike raises a question of law, the appropriate standard of review is *de novo*. *Jackson*, 323 Ill. App. 3d at 773.

## A. THE DISCLOSURE PROVISIONS IN THE JUVENILE COURT ACT

■ First, we must determine whether the arrest report, the lab report, and Officer Sandoval's deposition transcript, which were appended to Camco's motion for summary judgment, violated the disclosure provisions in the Act. If we find that there was a violation of the Act, we must then determine whether the evidence contained in the aforementioned exhibits was admissible and could be used to support Camco's motion for summary judgment.

The scope and application of the Act are defined solely by the legislature. *In re M.M.*, 156 Ill. 2d 53, 66 (1993). The Act defines a minor as a person under the age of 21 years subject to the Act. 705 ILCS 405/1—3(10) (West 2004). Section 1—7(A) of the Act provides that law enforcement records maintained by law enforcement agencies that relate to a minor that has been taken into custody before his seventeenth birthday shall be restricted to certain local, State, and federal law enforcement officers and shall be kept confidential. 705 ILCS 405/1—7(A) (West 2004). Section 1—7(E) of the Act provides that law enforcement officers may not disclose the identity of any minor when releasing information to the general public regarding the arrest, investigation, or disposition of any case involving a minor. 705 ILCS 405/1—7(E) (West 2004). We find that the Chicago police department and the Illinois State Police are law enforcement agencies (705 ILCS 405/1—7(A) (West 2004)), that Officer Sandoval is a law enforcement officer (705 ILCS 405/1—7(E) (West 2004)), and that their activities, as they relate to law enforcement records that involve minors,

come within the purview of the Act. We also find that the arrest report and the lab report that were provided to Camco are law enforcement records that come within the purview of the restrictions in section 1—7(A) of the Act. 705 ILCS 405/1—7(A) (West 2004). While the transcript from Officer Sandoval's deposition is not a law enforcement record (705 ILCS 405/1—7(A) (West 2004)), because Officer Sandoval is a law enforcement officer, the disclosures in his deposition testimony that relate to A.L., a minor under 17 years old, are subject to the confidentiality provisions of section 1—7(E) of the Act. 705 ILCS 405/ 1—7(E) (West 2004).

The record establishes that the arrest report, the lab report and Officer Sandoval's deposition were produced pursuant to subpoenas issued by Camco. Supreme Court Rule 237(a) empowers a party to a lawsuit to issue a subpoena. 166 Ill. 2d R. 237(a). A subpoena is an order of the court and a party is required by law to comply with the court order. *People ex rel. Fisher v. Carey*, 77 Ill. 2d 259, 265 (1979); *People v. Harris*, 91 Ill. App. 3d 1, 2 (1980); 166 Ill. 2d R. 237(a). Therefore, Officer Sandoval and the Illinois State Police were required by Illinois law to comply with Camco's subpoenas. *Fisher*, 77 Ill. 2d at 265; *Harris*, 91 Ill. App. 3d at 2.

Section 1—7(C) of the Act provides that the records of law enforcement officers cannot be disclosed to the public "except by order of the court." 705 ILCS 405/1—7(C) (West 2004); see also 705 ILCS 405/5— 905(8) (West 2004). While no court order was entered in this case authorizing the disclosures at Officer Sandoval's deposition or the release of the arrest report and the lab report to Camco, we find that the law enforcement agencies and officers provided the testimony and released the law enforcement records pursuant to a subpoena, a court order. See *Fisher*, 77 Ill. 2d at 265; *Harris*, 91 Ill. App. 3d at 2. Therefore, since the testimony was provided and the law enforcement records were released to Camco pursuant to a subpoena, which is a court order that must be complied with (*Fisher*, 77 Ill. 2d at 265; *Harris*, 91 Ill. App. 3d at 2), we hold that Officer Sandoval and the Illinois State Police did not violate the confidentiality provisions in the Act. 705 ILCS 405/1—7(C) (West 2004); see also 705 ILCS 405/5—905(8) (West 2004).

■ Next, we must determine whether Camco violated the confidentiality provisions of the Act when it obtained the documents relating to A.L., a minor, and placed the arrest report, the lab report, and Officer Sandoval's deposition transcript in the court file. We find that Camco is not a law enforcement agency subject to the confidentiality provisions of the Act (705 ILCS 405/1—7 (West 2004)), but that it is a private corporation acting as an agent and property manager for Van

Buren. We also find that the Act does not authorize Camco to possess law enforcement records maintained by law enforcement agencies that relate to a minor who has been arrested or taken into custody before his seventeenth birthday. 705 ILCS 405/1—7(A) (West 2004).[2] Nevertheless, the Act does not prohibit a non-law-enforcement agency, like Camco, from obtaining a juvenile's law enforcement records pursuant to a subpoena (705 ILCS 405/1—1 *et seq.* (West 2004)), nor does the Act prescribe sanctions if an entity like Camco, which is not authorized to possess law enforcement records that are related to minors under 17 years old, discloses the contents of those records to the public and thereby violates the confidentiality provisions in the Act. See *People v. Zepeda*, 47 Ill. 2d 23 (1970); *People v. Lewis*, 95 Ill. App. 3d 82, 85 (1981).

In order to determine if the arrest report, the lab report and Officer Sandoval's deposition transcript that were placed in the court file were released to the public, we must examine the Clerks of Courts Act. 705 ILCS 105/1 *et seq.* (West 2004). In section 16(6) of the Clerks of Courts Act, the Illinois legislature codified the common law right to access judicial records. *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 231 (2000); 705 ILCS 105/16(6) (West 2004). Section 16(6) of the Clerks of Courts Act provides:

> "All records, dockets and books required by law to be kept by such clerks shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records, docket and books, and also to all papers on file in the different clerks' offices and shall have the right to take memoranda and abstracts thereto." 705 ILCS 105/16(6) (West 2004).

The public's right to examine, inspect and review judicial records is clearly spelled out in section 16(6) of the Clerks of Courts Act. 705 ILCS 105/16(6) (West 2004). The arrest report, the lab report and Officer Sandoval's deposition transcript were appended to Camco's motion for summary judgment. We find that once Camco filed its motion for summary judgment, with the arrest report, the lab report, and Of-

---

[2]Section 1—7(A) of the Act restricts possession of law enforcement records maintained by law enforcement agencies to the following parties and entities: (1) any local, State, or federal law enforcement officers of any jurisdiction, or agency when necessary for the discharge of official business; (2) prosecutors, probation officers, social workers, or other individuals assigned by the court; (3) adult and juvenile prison review board; (4) authorized military personnel; and (5) persons engaged in *bona fide* research with the permission of the presiding judge of the juvenile court and the chief executive of the respective law enforcement agency. 705 ILCS 405/1—7(A) (West 2004).

ficer Sandoval's deposition transcript appended, and the motion and exhibits became a part of the court file, the documents became public records and the public had a right to access all the documents in the court file. *Skolnick*, 191 Ill. 2d at 232; *In re Marriage of Johnson*, 232 Ill. App. 3d 1068, 1074 (1992); 705 ILCS 105/16(6) (West 2004).

We note that the law enforcement agencies and Officer Sandoval did not make a motion to quash the subpoenas (735 ILCS 5/2—1101 (West 2004))[3] or request a protective order restricting the disclosure of the officer's testimony and the law enforcement records to the litigants in this case. 134 Ill. 2d R. 415(d).[4] We find that Camco did not violate the confidentiality provisions of the Act when it placed the law enforcement records and the deposition transcript in the court file with its motion for summary judgment because the documents were obtained pursuant to a subpoena, which is a court order. See *Fisher*, 77 Ill. 2d at 265; *Harris*, 91 Ill. App. 3d at 2. Therefore, since Camco obtained the law enforcement records and the officer's testimony pursuant to a subpoena, which is a court order, and since a protective order restricting the disclosure of the contents of the law enforcement records and the law enforcement officer's testimony was never entered by the trial court, we hold that the Act was not violated when Camco issued a subpoena and obtained the law enforcement records and the officer's testimony and placed the records and the deposition transcript in the court file.

Ms. Lowery maintains, however, that the law enforcement records and the deposition testimony should not have been considered by the trial court. We note that even if we had found that Camco violated the confidentiality provisions in the Act, the Act fails to prescribe a sanction for a violation of its confidentiality provisions. *Zepeda*, 47 Ill. 2d at 27; *Lewis*, 95 Ill. App. 3d at 85. The *Zepeda* and *Lewis* cases are instructive and will help us decide whether evidence obtained in violation of the Act is admissible.

In *Zepeda*, a 16-year-old juvenile provided a written statement to the police when he was arrested on the street with a codefendant and taken to a police station where he made admissions after 30 minutes of questions, and he was found guilty of murder after a bench trial.

---

[3]Section 2—1101 of the Code of Civil Procedure provides "[f]or good cause shown, the court on motion may quash or modify any subpoena." 735 ILCS 5/2—1101 (West 2004).

[4]Rule 415(d) provides "[u]pon a showing of cause, the court may at any time order that specified disclosures be restricted or deferred, or make such other order as is appropriate, provided that all material and information to which a party is entitled must be disclosed in time to permit counsel to make beneficial use thereof." 134 Ill. 2d R. 415(d).

*Zepeda*, 47 Ill. 2d at 24-26. The appellate court in *Zepeda* held that sections 3—2(1) and 2—9(1) of the Act rendered the statement inadmissible. *Zepeda*, 47 Ill. 2d at 25; see Ill. Rev. Stat. 1965, ch. 37, pars. 702—9(1), 703—2(1). Section 3—2(1) provided that an officer taking a minor into custody without a warrant shall immediately make a reasonable attempt to notify the parents that the minor has been taken into custody and where he is held and shall surrender the minor to the nearest juvenile officer. See *Zepeda*, 47 Ill. 2d at 25. Section 2—9(1) of the Act provided that neither the fact that a minor has been the subject of proceedings under this Act nor any confession, admission or statement made by him to the court or to any officer thereof before his eighteenth birthday is admissible in evidence against him or his interest in any other court or proceeding. *Zepeda*, 47 Ill. 2d at 27. The *Zepeda* court found that no provision in section 3—2(1) of the Act imposed a sanction for a failure to comply with the Act and that unlawful detention would not, by itself, invalidate a confession or statement of an accused. *Zepeda*, 47 Ill. 2d at 27. Therefore, the *Zepeda* court held that the statement made by a juvenile defendant while he was unlawfully detained was properly admitted into evidence even though a provision of the Act was violated. *Zepeda*, 47 Ill. 2d at 29.

In *Lewis*, the defendant was identified from a photo lineup by a victim who was shown photographs from the defendant's juvenile bureau records. The *Lewis* court acknowledged that section 2—8(3) of the Act restricts the disclosure of police records concerning minors to the public. *Lewis*, 95 Ill. App. 3d at 85. The *Lewis* court followed *Zepeda* and found that neither section 2—8(3) nor any other section of the Act imposed sanctions for unlawful disclosure. *Lewis*, 95 Ill. App. 3d at 85. Therefore, the *Lewis* court held that it was not error to permit testimony regarding the victim's identification. *Lewis*, 95 Ill. App. 3d at 85. The *Lewis* court also held that the photographs were admissible in evidence because there was no evidence presented that the photographs (mug shots) had been used as evidence in a juvenile proceeding. *Lewis*, 95 Ill. App. 3d at 86.

We note that *Zepeda* and *Lewis* were decided in 1970 and 1981, respectively. Nonetheless, after a close examination of the Act, over 20 years later, we still find that there is no provision that prescribes a sanction if the Act is violated. 705 ILCS 405/1—1 *et seq.* (West 2004); *Zepeda*, 47 Ill. 2d at 29; *Lewis*, 95 Ill. App. 3d at 85. Therefore, we find that the Act does not make evidence disclosed in violation of its confidentiality provisions inadmissible in evidence. *Zepeda*, 47 Ill. 2d at 27; *Lewis*, 95 Ill. App. 3d at 85-86.

■Ms. Lowery also argues in her brief that in addition to violating

section 1—7 of the Act, Camco also violated section 1—8 of the Act. 705 ILCS 405/1—7, 1—8 (West 2004). Section 1—8 of the Act protects minors by limiting who may copy and inspect their juvenile court records. 705 ILCS 405/1—8 (West 2004). The record establishes that Ms. Lowery never raised this issue in her motion to strike, in her motion for summary judgment or in the memorandum in support of her motion for summary judgment. The record establishes that the trial court did not consider section 1—8 of the Act when it granted Camco's motion for summary judgment. It is axiomatic that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal. *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 500-01 (1985); *Board of Education v. Kusper*, 92 Ill. 2d 333, 343 (1982). However, we will consider this issue because waiver is a limitation on the parties and not on the jurisdiction of this court. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 152 (2004).

Ms. Lowery argues that Camco, or Camco's attorney, inspected A.L.'s juvenile court file, obtained information about A.L.'s arrest, and by doing so violated the confidentiality provisions of section 1—8 of the Act. 705 ILCS 405/1—8 (West 2004). The record fails to establish that Camco inspected A.L.'s juvenile court file or obtained any of its exhibits, the arrest report, the lab report, or Officer Sandoval's deposition transcript from A.L.'s juvenile court file. The record establishes that Camco obtained its exhibits pursuant to a subpoena. Therefore, section 1—8 of the Act was not violated because there is no evidence in the record to support Ms. Lowery's contention that Camco obtained its exhibits from A.L.'s juvenile court file. 705 ILCS 405/1—8 (West 2004).

## B. THE RULES OF EVIDENCE

■ Next, we must determine whether the information in the arrest report, the lab report, and Officer Sandoval's deposition testimony is admissible in evidence and whether the information in the exhibits should have been stricken by the trial court because the information violated a rule of evidence. A basic principle of the law of evidence is that what is relevant is admissible. *People v. Monroe*, 66 Ill. 2d 317, 321 (1977). Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *People v. Eyler*, 133 Ill. 2d 173, 217 (1989); *Monroe*, 66 Ill. 2d at 322, quoting Fed. R. Evid. 401. Evidence is probative when to the normal mind it tends to prove or disprove a matter at issue. *People v. Nichols*, 27 Ill. App. 3d 372, 386 (1975). The matter at

issue in this case is whether Ms. Lowery or a member of her household violated the terms of her Section 8 lease. Illinois courts have generally held that a police report is not admissible and that the mere attempt to introduce such an exhibit may be considered reversible error. *Cranwill v. Donahue*, 132 Ill. App. 3d 873, 874 (1985). The theory behind this line of cases is that arrest or police reports are inadmissible because the information in the report is generally hearsay or states conclusions. *Cranwill*, 132 Ill. App. 3d at 874. Therefore, we find that the arrest report in this case was inadmissible and that the trial court erred when it denied Ms. Lowery's motion to strike the arrest report. *Cranwill*, 132 Ill. App. 3d at 874.

■ Next, we must determine whether the information contained in the Illinois State Police lab report violates the hearsay rule. Section 115—15(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—15(a) (West 2004)) provides an exception to the hearsay rule for lab reports involving any criminal prosecution for a violation of the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 2004)). The Code's allowance for the use of laboratory reports in a criminal prosecution provided by section 115—5(a) is applicable in a civil case if the routines and procedures of the laboratory are shown by the evidence as having been commonly accepted by the forensic chemist profession, and the business of the laboratory is the securing, handling, and analysis of controlled substances, amongst other types of specimens. See *Woolley v. Hafner's Wagon Wheel, Inc.*, 22 Ill. 2d 413, 418-19 (1961). Section 115—5(a) of the Code provides that a laboratory report from the Department of State Police, Division of Forensic Services, that is signed and sworn to by the person performing an analysis is *prima facie* evidence of the contents, identity and weight of the substance and is admissible in evidence when it states: (1) that the substance that is the basis of the alleged violation has been weighed and analyzed; (2) the person's findings as to the contents, weight and identity of the substance; and (3) that it contains any amount of a controlled substance or cannabis. 725 ILCS 5/115—15(a) (West 2002). The lab report's admission into evidence is only appropriate if the lab report is accompanied by a copy of a notarized statement from the signer of the report giving the name of the signer and stating: (1) that he or she is an employee of the Department of State Police, Division of Forensic Services; (2) the name and location of the laboratory where the analysis was performed; (3) that performing the analysis is a part of his or her regular duties; and (4) that the signer is qualified by education, training and experience to perform the analysis. 725 ILCS 5/115—15(a) (West 2002). The signer shall also state that scientifically accepted tests were performed with due caution and that the evidence

was handled in accordance with established and accepted procedures while in the custody of the laboratory. 725 ILCS 5/15—15(a) (West 2002).

We find that the forensic chemist's lab report and his notarized affidavit, which authenticates his lab report, meet the requirements of section 115—15(a) of the Code. Thus, the lab report is admissible in this civil proceeding because it was completed by an employee of the Illinois State Police, Division of Forensic Services, an agency in the business of securing, handling, and analyzing specimens for law enforcement agencies, and the forensic chemist averred that scientifically accepted tests were utilized and that specimens were handled with established and accepted procedures. See *Woolley*, 22 Ill. 2d at 418-19; 725 ILCS 5/115—15(a) (West 2002). The information in the lab report is relevant and probative of the issue of whether Ms. Lowery violated the terms of her Section 8 lease. Finally, and most importantly, the information in the lab report, coupled with Camco's other exhibits, establishes a material violation of the Section 8 lease by A.L., an occupant of Ms. Lowery's apartment.

■ Next, we must determine whether Officer Sandoval's deposition testimony was admissible in evidence. Discovery depositions may be used for any purpose for which an affidavit may be used and can be used to support a motion for summary judgment. *Howard v. County of Cook*, 145 Ill. App. 3d 538, 541 (1986). Discovery deposition testimony submitted in support of a motion for summary judgment must not consist of conclusions but of facts admissible in evidence. See 210 Ill. 2d R. 191(a). Evidence that is inadmissible at trial is also inadmissible when used to support a motion for summary judgment. *Fearon v. Mobil Joliet Refining Corp.*, 131 Ill. App. 3d 1, 8 (1984).

Camco can use deposition testimony to support its motion for summary judgment; therefore, we must determine if Officer Sandoval's testimony was relevant. Officer Sandoval's deposition testimony was relevant and is probative of the issues in the case because it established: (1) that Officer Sandoval was present at Ms. Lowery's apartment (Unit 1301A) on March 27, 2002; (2) that before A.L. was arrested, an adult male, Maurice Jackson, was arrested outside Unit 1301A with cannabis on his person; (3) that A.L. answered the police officers' knock at the door of Unit 1301A while holding a large bag containing 24 small Ziploc bags of suspected cannabis in his hand; (4) that an Igloo cooler in Unit 1301A was found with suspected cannabis inside; (5) that over 96 bags of suspected cannabis weighing 211 grams were recovered from Unit 1301A; (6) that A.L. was arrested for possession and delivery of cannabis; and (7) that the suspected cannabis

recovered from A.L. and the Igloo cooler in Unit 1301A tested positive for cannabis. We find that Officer Sandoval's deposition testimony was admissible in evidence because he observed A.L. with drugs and, therefore, had personal knowledge of A.L.'s possession of drugs in Unit 1301A on March 27, 2001. Finally, we find that Officer Sandoval's testimony that A.L. possessed bags that tested positive for cannabis is hearsay and inadmissible because that testimony was based on the findings of the forensic chemist. *People v. Lawler*, 142 Ill. 2d 548, 557 (1991).

■ In light of the fact that the Act does not provide a sanction for law enforcement testimony or records wrongfully disclosed, and since the lab report and Officer Sandoval's deposition testimony are admissible in evidence, we find that the trial court did not err when it denied Ms. Lowery's motion to strike the lab report and Officer Sandoval's deposition testimony. We find, however, that the trial court did err when it failed to strike the arrest report. However, given the overwhelming admissible evidence in Officer Sandoval's deposition transcript and the lab report, the admission of the arrest report was harmless. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 168 (1994) (the court held that in light of the overwhelming evidence on which to find the defendant liable, the trial court's error in admitting certain evidence was harmless).

## THE MOTION FOR SUMMARY JUDGMENT

■ The question now becomes whether Camco was entitled to a judgment as a matter of law. Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions and admissions on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998); 735 ILCS 5/2—1005(c) (West 2004). The purpose of summary judgment is to determine whether a question of fact exists. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996), citing *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517 (1993). Although summary judgment is encouraged to aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should only be allowed when the movant's right is clear and free from doubt. *Busch*, 169 Ill. 2d at 333. The standard of review in cases involving a review of summary judgment orders is *de novo. Bishop v. Burgard*, 198 Ill. 2d 495, 500-01 (2002), citing *Ragan*, 183 Ill. 2d at 349.

In light of the fact that we have determined that the trial court properly considered the lab report and Officer Sandoval's deposition

testimony and concluded that the information in those documents established that Ms. Lowery violated the terms of her lease, there are no material facts in dispute in this case. The question becomes whether Camco was entitled to judgment as a matter of law.

We believe a United States Supreme Court case, *Department of Housing & Urban Development v. Rucker*, 535 U.S. 125, 152 L. Ed. 2d 258, 122 S. Ct. 1230 (2002), establishes Camco's entitlement to a judgment as a matter of law. In *Rucker*, the Oakland Housing Authority (OHA) instituted eviction proceedings against four public housing tenants alleging violations of the provisions in their leases. *Rucker*, 535 U.S. at 128, 152 L. Ed. 2d at 265, 122 S. Ct. at 1232. The complaint alleged: (1) that two tenants' respective grandsons, each of whom was listed as a resident on his grandparents' lease, were caught smoking marijuana in the apartment complex parking lot; (2) that the daughter of a tenant was found in possession of cocaine and a crack cocaine pipe three blocks from the apartment complex; and (3) that on three instances within a two-month period, a tenant's caregiver and two other individuals were found with cocaine in the tenant's apartment. *Rucker*, 535 U.S. at 128, 152 L. Ed. 2d at 265, 122 S. Ct. at 1232. The evictions were predicated on 42 U.S.C. § 1437d(l)(6) (Supp. V 1994), a statute promulgated by Congress that requires public housing agencies to " 'utilize leases which . . . provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.' " *Rucker*, 535 U.S. at 127, 152 L. Ed. 2d at 264, 122 S. Ct. at 1232, quoting 42 U.S.C. § 1437d(l)(6) (Supp. V 1994). The tenants' leases, tracking the language of section 1437(d)(l)(6), obligated the tenants to " 'assure that the tenant, any members of the household, a guest, or another person under the tenant's control, shall not engage in... [a]ny drug-related criminal activity on or near the premise[s].' " *Rucker*, 535 U.S. at 128, 152 L. Ed. 2d at 265, 122 S. Ct. at 1232; 42 U.S.C. § 1437d(l)(6) (Supp. V 1994). The tenants' leases with the OHA stated that the tenant " 'understand[s] that if I or any member of my household or guests should violate this lease provision, my tenancy may be terminated and I may be evicted.' " *Rucker*, 535 U.S. at 128, 152 L. Ed. 2d at 265, 122 S. Ct. at 1232. The HUD regulations administering section 1437(d)(l)(6) require lease terms authorizing eviction in circumstances involving drugs. *Rucker*, 535 U.S. at 128-29, 152 L. Ed. 2d at 265, 122 S. Ct. at 1232.

The tenants challenged HUD's interpretation of 42 U.S.C.

§ 1437d(l)(6) (Supp. V 1994) arguing that the statute does not require lease terms authorizing the eviction of "innocent" tenants who lack knowledge of drug-related criminal activities. *Rucker*, 535 U.S. at 129, 152 L. Ed. 2d at 265-66, 122 S. Ct. at 1233; 42 U.S.C. § 1437d(1)(6) (Supp. V 1994). The *Rucker* Court held "that 42 U.S.C. § 1437d(l)(6) unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity." *Rucker*, 535 U.S. at 130, 152 L. Ed. 2d at 266, 122 S. Ct. at 1233; 42 U.S.C. § 1437d(1)(6) (Supp. V 1994).

Here, the facts are similar to those in *Rucker*. Like the tenants in *Rucker*, Ms. Lowery lived in a housing project that was subsidized by HUD under the "Section 8 New Construction Program"; she signed a lease predicated on 42 U.S.C. § 1437d(1)(6) (2000) that was approved by HUD; and, as a Section 8 tenant, she received federal assistance with her rent. 42 U.S.C. § 1437d(1)(6) (2000). By signing the lease, Ms. Lowery agreed that she could be evicted if a member of her household engaged in drug-related criminal activity. The family members in *Rucker*, the two tenants' grandsons and the tenant's daughter, are similar to A.L. because all were members of the leaseholders' households and all were found in possession of illegal drugs in violation of the lease. In fact, A.L.'s violations were more serious than the violations of the household members in *Rucker* because A.L. possessed a large quantity of drugs inside the leased apartment, while in *Rucker*, the tenants' grandsons were smoking marijuana in the apartment complex parking lot and the tenant's daughter was found with cocaine and a cocaine crack pipe three blocks away from the apartment complex. The facts in *Rucker* are similar and difficult to distinguish from the facts in this case. Therefore, we find that *Rucker* applies and that Camco was entitled to a judgment as a matter of law. *Rucker*, 535 U.S. at 136, 152 L. Ed. 2d at 270, 122 S. Ct. at 1236.

Ms. Lowery argues: (1) that the "engage in or permit" language of the lease required that she have knowledge of the illegal activity; (2) that the facts in *Rucker* are distinguishable from the facts in this case; and (3) that federal statutes and regulations Camco cited in support of its motion for summary judgment are inapplicable in this case. Ms. Lowery supports her argument that the tenant must have knowledge of the illegal activity with *Kimball Hill Management Co. v. Roper*, 314 Ill. App. 3d 975 (2000), a case where we held that the lease language required proof of the tenant's knowledge of criminal activity. *Kimball Hill*, 314 Ill. App. 3d at 981. We find Ms. Lowery's reliance on *Kimball Hill* to be misplaced in light of the Supreme Court's decision in *Rucker*. *Rucker*, 535 U.S. at 130-31, 152 L. Ed. 2d at 266-67, 122 S. Ct. at 1233.

Ms. Lowery also argues that *Rucker* only applies to tenants who live in public housing authority projects. According to Ms. Lowery, *Rucker* does not apply to her case because she does not live in a public housing authority project, but in a private housing complex. The *Rucker* Court stated that "it was reasonable for Congress to permit no-fault evictions in order to 'provide public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs.' " *Rucker*, 535 U.S. at 134, 152 L. Ed. 2d at 269, 122 S. Ct. at 1235, quoting 42 U.S.C. § 11901(1) (1994). Van Buren, Ms. Lowery's housing complex, was constructed with federal funds. The lease between Ms. Lowery and Camco was an approved HUD apartment lease for subsidized programs. Ms. Lowery participated in the Section 8 program and her rent was subsidized with federal funds. *Rucker* clearly applies in this case because Van Buren is a federally assisted low-income housing complex with tenants in the Section 8 program. Therefore, in light of *Rucker*, this argument also lacks merit. *Rucker*, 535 U.S. at 134, 152 L. Ed. 2d at 269, 122 S. Ct. at 1235.

Finally, Ms. Lowery argues that Camco failed to draft a lease containing only the regulatory language of section 24 C.F.R. § 5.858 (2005) and should be required to show that she had knowledge of A.L.'s drug-related criminal activity because the lease contained additional "engage in or permit" language. 24 C.F.R. § 5.858 (2005). *Rucker* addressed Ms. Lowery's argument that she is an innocent tenant because she had no knowledge of her son's illegal activity. *Rucker* very clearly holds that landlords of federally assisted low-income housing may evict tenants for drug-related criminal activity of household members, even if the tenant has no knowledge of the illegal activity. Therefore, given the illegal activities of A.L., we find this argument devoid of merit. *Rucker*, 535 U.S. at 136, 152 L. Ed. 2d at 270, 122 S. Ct. at 1236.

In conclusion, Camco was entitled to a judgment as a matter of law because Ms. Lowery violated the material provisions in her lease when her son, an occupant of Unit 1301A, became involved in drug-related criminal activity. *Rucker*, 535 U.S. at 135-36, 152 L. Ed. 2d at 269-70, 122 S. Ct. at 1235-36. Therefore, the trial court did not err when it granted Camco's motion for summary judgment. *Rucker*, 535 U.S. at 136, 152 L. Ed. 2d at 270, 122 S. Ct. at 1236.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

GALLAGHER, P.J., and CAMPBELL, J., concur.