Ruth E. Herington, Administrator of the Estate of Thead M. Herington, Deceased, Plaintiff-Appellant, v. Illinois Power Company, a Corporation, Defendant-Appellee.

Gen. No. 10,794.

Fourth District.

February 16, 1967.

Thomson, Thomson and Mirza, of Bloomington (Chester Thomson, of counsel), and Yoder, Yoder and Luedtke, of Bloomington, for appellant.

Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (William R. Brandt, of counsel), for appellee.

CRAVEN, P. J.

This appeal arises from denial of plaintiff's post-trial motion which sought a new trial. The jury below found for defendant, Illinois Power Company, in this wrongful death action. Plaintiff contends that certain errors occurred during the course of the trial which were prejudicial and require that a new trial be had. These alleged errors are: (a) Striking certain allegations of negligence from her complaint at the close of her case-in-chief; (b) failing to allow certain amendments to the complaint which she tendered at the close of all the evidence; (c) refusing proper jury instructions; (d) denying

an offer of proof made on her behalf; and (e) allowing the defendant to present conjectural testimony for the jury's consideration over objection. The plaintiff also contends that the verdict is against the manifest weight of the evidence.

A consideration of these questions requires a review of the pertinent evidence. Plaintiff's decedent, Thead Herington, hereinafter referred to as "Herington," was employed by Eichelkraut Construction Company in November of 1962 as a steelworker on a construction site at the west campus complex of Illinois State University at Normal, Illinois. Eichelkraut was the general contractor in charge of erecting the Practical Arts Building for the university. On November 19, 1962, the day that Herington was killed, the building was about two-thirds completed. On that day, Eichelkraut's superintendent, Thacker, hired a crane from LaRue Construction Company to lift bundles of roof steel from the place where they had been stored since the preceding summer, to the top of the new building. This crane had a boom approximately one hundred feet in length. The steel bundles were located in a line running generally north and south under power lines owned by the defendant, Illinois Power Company, which extended north and south on poles at the west edge of the construction site. These power lines had been in place before April, 1962, when construction began on the building in question, and they served another building under construction being built by a different contractor, not the construction site in question. There were two 2400-volt lines attached to either end of eight-foot crossarms situated near the top of each pole. A neutral wire was attached to the poles four feet below the charged wires. In the vicinity of the steel, the charged wires were twenty-four feet above ground. The bundles of steel were approximately five feet high.

Five or six bundles had been moved at the time of the occurrence and the last bundle was being attached to the

cable of the crane when the incident occurred. On prior loads either Herington or the other steelworker present, Gorman, would direct the crane operator regarding placement of the cable near the bundle to be raised. Then one of them would pass the cable hook and slack cable from the crane under the bundles of steel to the other, and the one receiving it would pull the hook and slack cable on through and attach it in such a manner as to make a loop of the cable. Prior to beginning work that day, Thacker called Herington and Gorman together with the crane operator and Thacker's assistant. Thacker told all the men, including Herington, to be careful of the power lines under which the steel lay; that the voltage was not known and they should not get close to the wires. Gorman and Herington acknowledged this warning. No notice was given to the defendant that the crane would be used or that the steel would be removed. The crane was positioned 25–30 feet west of the Practical Arts Building. The power lines ran in a general north-south line 110 feet west of the building. With the boom extended toward the steel, the end from which the load cable was lowered was about fifty feet above the easternmost charged wire. The operator, in the course of picking up a load, would swing the crane from the building to the steel counterclockwise and lower the cable to either Gorman or Herington. He could not tell the horizontal distance between the load cable and the power lines and therefore depended upon signals from Gorman or Herington, depending upon which one was in the best position to be seen.

On the last load Gorman signaled the crane. He was standing under the electric wires positioned so that he could see the wires, the boom and the cable. He signaled the operator to stop the rotation of the boom and signaled for the load cable to come down. As the cable was lowered it was about two feet east of the easternmost power line. When Gorman got the slack, he knelt

on the east side of the bundle. Herington knelt on the west side with his head about four inches above the earth, working toward the hook and underneath the bundle. When Herington took the hook and pulled it toward him, the load cable became charged and killed him instantly.

No one from Illinois Power Company was present on the day or at the time of this occurrence. The electric wires were visible from all parts of the construction site.

Although there was a dispute as to some of the above-stated facts in the evidence, there is competent evidence which supports each of the above recitations. With respect to this evidence, the jury was instructed, at the request of the plaintiff, in the form of IPI 20.01, that the following charges of negligence were made against the defendant:

> "1. Failing to properly insulate the temporary power line.
> "2. Negligently maintained a high voltage uninsulated power transmission line above the ground when the defendant knew or should have known that large cranes were being employed in close proximity to the power line.
> "3. Failed to remove a high voltage uninsulated power line when defendant knew or should have known that cranes were being used in close proximity to the power line.
> "4. Failed to transmit the electrical power underground.
> "5. Negligently failed to post signs or otherwise give warning of the fact that said power line in fact was not covered with insulating material."

The jury was also instructed, at plaintiff's request, as to the meaning of "proximate cause" in the language of IPI 15.01 and regarding concurring causes in the language of IPI 12.04:

"When I use the expression 'proximate cause,' I mean any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

. . . . . .

"More than one person may be to blame for causing an injury. If you decide that the defendant, Illinois Power Company, was negligent and that its negligence was a proximate cause of injury to the plaintiff's testate, Thead Herington, it is not a defense that some third person who is not a party to the suit may also have been to blame.

"However, if you decide that the sole proximate cause of injury to the plaintiff's testate, Thead Herington, was the conduct of some person other than the defendant, Illinois Power Company, then your verdict should be for the defendant, Illinois Power Company."

██ In our view, if the instructions were proper—an issue to be discussed later—a resolution by the jury of the issues of the existence of defendant's negligence and whether negligence, if any, was so found, was a proximate cause of the decedent's death, in favor of either party, was warranted. A verdict favorable to the defendant is not against the manifest weight of the evidence. There are areas in which reasonable minds can and will disagree as to liability and these cannot be defined except on an ad hoc basis. Because varying conclusions might be reached, the questions of negligence and proximate cause were ideally suited for the jury. Kacena v. George W. Bowers Co., 63 Ill App2d 27, 211 NE 2d 563 (1st Dist 1965).

437

If the plaintiff is to have a new trial, then it must be based upon prejudicial error which occurred as a result of the trial court's rulings in the course of the trial, which are preserved for review in the post-trial motion and on appeal.

■ The first alleged error was striking from the plaintiff's complaint the following allegations at the close of the plaintiff's evidence:

> "(d)   Negligently failed to post any warning as to the existence of said temporary uninsulated high voltage power line when the Defendant knew or should have known that workmen were working with cranes in close proximity to said line and that such warning was necessary for the safety of Plaintiff's intestate.
>
> "(e)   Negligently failed to warn the contractors or subcontractors performing work in said area of the existence of the Defendant's uninsulated, high voltage temporary power line and the dangers attendant thereto when the Defendant knew or should have known that said contractors, subcontractors and employees were working with cranes in close proximity to said power line and that such warning was necessary for the safety of Plaintiff's intestate."

With reference to these allegations, all the evidence indicates a warning by the defendant that the power line existed was totally unnecessary. The evidence was undisputed that the workmen, including Herington, could see the high-voltage line and the contractor in charge of the work, through his superintendent and assistant, acknowledged their awareness of the danger presented to themselves, their equipment, and the workmen employed on the site prior to the time that Herington was killed.

> "The purpose of warning is to apprise a party of the existence of a danger of which he is not aware . . ."

Bakovich v. Peoples Gas Light & Coke Co., 45 Ill App2d 182, 188, 195 NE2d 260, 263 (1st Dist 1963).

See also Restatement, Second, Torts, § 343. The allegations do not describe the breach of any duty owed by the defendant under the circumstances disclosed by the evidence and were properly stricken.

■ Plaintiff complains that the offer of the following amendment to the complaint was denied at the close of all the evidence:

"(d) Negligently failed to post signs or otherwise give warning of the fact that 2400 Volts were being transmitted through said power line and that said power line in fact was uninsulated."

■ This ruling was proper. There was no evidence that the voltage in the line in and of itself was of any particular significance, and the jury was instructed on the issues that high voltage was involved. In addition, plaintiff's attorney argued, in closing, that the power company was negligent because the presence of 2,400 volts in the line created a duty on its part either to insulate or bury the wires. He also argued that liability should be imposed, in part, because only the power company knew the wire was carrying 2,400 volts and only it knew it was uninsulated. He told the jury that a higher duty to warn existed here because 2,400 volts were involved than would have existed had 110 volts been involved. In view of this argument and the court's instruction that negligence was charged in failure to warn of no insulation, or failure to insulate or bury a high-voltage line, we are unable to say that error, if any, was prejudicial. In addition, the plaintiff abandoned her attempt to put the actual voltage in front of the jury as a measure of the defendant's duty to warn and submitted a third form of paragraph (d), which was allowed as an amendment by the trial court. This amendment appears as No. 5 in the issues instruction above quoted. Any error which

might have occurred with respect to paragraph (d) was thereby waived.

██ Plaintiff complains the following instruction, as tendered, was rejected:

"If you decide that the defendant was negligent and that his negligence was a proximate cause of injury to the plaintiff, it is not a defense that something else may also have been a cause of the injury."

Another instruction on the liability of different actors for more than one act leading to injury, based upon IPI 12.04, was given and is quoted earlier in this opinion. The court did not commit error under the circumstances, as the given instructions adequately and accurately covered the same territory as the rejected one. The jury was properly instructed that if the negligence of the power company was a proximate cause of the death of Herington, the fact that others not parties may also have been to blame was no defense.

██ Plaintiff complains because she was prevented from proving that two days following the accident the defendant posted signs on the premises in question warning of high voltage. Plaintiff offered the evidence upon the theory that it was pertinent to show control over the premises. However, there was no contention that the power company could not have put such signs upon the poles or upon the ground between the poles prior to the accident, and negligence was charged for failing to do so. The sole witness who testified upon this issue was the service area engineer for defendant in November, 1962. He stated that he knew of no limitation on the defendant to put signs on the poles had it elected to do so at or prior to the time of the occurrence, nor did he know of any limitation upon their authority to put signs on the ground. There is nothing admitted or denied in the pleadings which makes an issue of defendant's inability, prior to the occurrence, to exercise sufficient control over the

poles, signs or ground to allow it to place warning signs in the vicinity of the occurrence. In the absence of an issue raised by the pleadings or the proof on the part of the defendant that it was unable physically to place warnings at the scene, we believe the offer of proof was properly denied as there was no issue making the evidence relevant at the times it was offered.

█ Plaintiff likewise alleges error because a witness employed by the engineers in charge of supervising construction of the building in question was asked on cross-examination by defendant's attorney concerning his testimony that the crane came on the site a few days before the accident, "Could it [the date of delivery of the crane] have been the same day as the accident?" The question was objected to because it called for conjecture or speculation. The witness answered that "it could have been" after the objection was overruled. The error, if any, was harmless and not prejudicial in a record otherwise remarkably free of error, particularly in view of the fact that it was undisputed that the only day that steel was removed from under the power line was November 19, 1962. There is no evidence that on other occasions any activity was occurring on this construction site in close proximity to the power lines, which were 110 feet west of the construction and 24 feet above the ground. Certainly it was not contended that defendant's power line presented any danger to workmen in the vicinity of the crane or cables while they were being used away from the charged wires. Resolution of the issue of knowledge, actual or constructive, of the defendant that cranes or their appurtenances were likely to become entangled in the power line in question would revolve around the length of time such cranes were used in the vicinity of the power lines. The only evidence of such activities relates to the activities of Herington and Gorman on November 19, 1962.

The court properly denied plaintiff's post-trial motion and properly entered judgment on the verdict of the jury in this case. The judgment of the circuit court of McLean County is hereby affirmed.

Affirmed.

SMITH and TRAPP, JJ., concur.