FIRST DIVISION
March 24, 2008

No. 1-07-0076

| | | |
|---|---|---|
| JEAN LISOWSKI, Indiv. and as the Special Adm'r of the Estate of Edward A. Lisowski, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | No. 03 L 2903 |
| v. | ) ) | |
| MacNEAL MEMORIAL HOSPITAL ASSOCIATION and JOHN D. BROFMAN, | ) ) ) | Honorable John B. Grogan, |
| Defendants-Appellants. | ) | Judge Presiding. |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Defendants MacNeal Memorial Hospital Association and John D. Brofman, M.D., appeal an order granting plaintiff Jean Lisowski's motion for a new trial. Plaintiff brought a negligence action against defendants after the death of her husband, Edward A. Lisowski (Lisowski). A jury returned a verdict for defendants. Plaintiff moved for a new trial. Her main contention was that the trial court erred in refusing to give the "missing-witness" jury instruction (Illinois Pattern Jury Instructions, Civil, No. 5.01 (2006) (hereinafter IPI Civil (2006) No. 5.01)) after defendants failed to produce their expert witness. We reverse and direct the trial court to reinstate the jury's verdict.

Plaintiff alleged in her complaint that Lisowski suffered years of ill health before his

death because of defendants' negligence. She alleged Brofman was negligent in performing a thoracentesis to drain fluid from Lisowski's lungs through a chest tube on November 6, 1996. She also alleged Brofman failed to obtain Lisowski's consent to the procedure. Plaintiff alleged MacNeal Hospital was liable under an agency theory. During the procedure, Lisowski's diaphragm and liver were lacerated. He required emergency surgery and intensive care. He was released from the hospital 10 days after the procedure. He died three years later of ventricular fibrillation, a heart problem.

The first trial in October 2005 ended in a hung jury. The second trial, beginning on May 1, 2006, is the subject of this appeal.

In discovery, defendants disclosed Dr. Jesse Hall as a controlled expert witness under Supreme Court Rule 213(f)(3) (210 Ill. 2d R. 213(f)(3)). Defendants said Hall, a pulmonologist and critical care specialist, would state that Brofman's conduct complied with the standard of care. Hall apparently was deposed in 2002 but the deposition is not in the record. Plaintiff maintains Hall stated in the deposition that Brofman deviated from the standard of care.

Plaintiff disclosed Dr. William Warren, a thoracic surgeon, as her expert witness under Rule 213(f)(3) (210 Ill. 2d R. 213(f)(3)). Plaintiff did not disclose that Warren would say Lisowski suffered depression and suicidal tendencies because of Brofman's negligence. Plaintiff also disclosed Edward Allen Lisowski (Edward), the couple's son, who plaintiff said would testify to family hardships attributable to Brofman's negligence. Three months before the trial, plaintiff's counsel sent a letter to defense counsel, asking to add Hall as a plaintiff's witness if defendants intended to abandon him. Defense counsel responded by letter, stating defendants

had not abandoned Hall.

In opening statements, plaintiff's counsel told the jury that Hall would testify and state that Brofman deviated from the standard of care by inserting the chest tube at the wrong location and in the wrong direction. Defense counsel did not object.

Plaintiff called Brofman in her case in chief as an adverse witness under section 2-1102 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1102 (West 2006)). Brofman denied deviating from the standard of care either in performing the thoracentesis or in obtaining consent. Brofman said he received training from Hall when he was a medical student. Brofman denied having "independent knowledge" of Hall's alleged opinion that Brofman deviated from the standard of care in treating Lisowski.

Plaintiff's expert Dr. Warren said he reviewed the medical records from the procedure, the depositions of the treating physicians, a 1999 electrocardiogram report and an autopsy report in forming his opinions. Warren said Brofman deviated from the standard of care in obtaining consent while Lisowski was sedated and in the way he performed the thoracentesis. Warren admitted on cross-examination that he did not know how Lisowski reacted to sedation or his mental capacity at the time he allegedly consented. Warren said obtaining consent after as little as one-tenth of a milligram of the sedative would be a deviation from the standard of care. The trial court barred Warren from testifying that Lisowski was depressed and suicidal after the procedure because plaintiff failed to disclose these opinions in discovery.

Defendants called Brofman in their case in chief. He testified, "I believe that the anatomical landmarks I chose and the techniques I chose and the care with which the tube was

inserted all complied very much with the standard of care."  The following took place in the jury's presence during cross-examination of Brofman by plaintiff's counsel:

"Q.  [(by plaintiff's counsel)]  *** [Y]ou said you did [your training in] pulmonary critical care at the University of Chicago, correct?

A.  [(Brofman)]  Yes.

Q.  And that in fact was under Dr. Jesse Hall, the expert that your counsel has retained in this case, correct?

A.  *** Dr. Hall was part of the faculty at the time I was there, yes.

Q.  So you were actually studying under Dr. Jesse Hall, correct?

A.  Dr. Hall was part of the faculty and was involved in my training.

Q.  Right.  So when Dr. Hall comes in here later today and tells us that you violated the standard of care by inserting the chest tube [as you did], *** do you have any problem with him testifying to that ***?

MS. STEVENSON [(defendants' counsel)]:  Objection.  Move to strike.

THE COURT [(to plaintiff's counsel)]: Counsel, you have now taken the burden to bring Dr. Hall in.

BY MR. BASILE [(plaintiff's counsel)]:

Q.  Do you have any problems with him testifying to that, or are you going to have a problem with qualifications?

MS. STEVENSON: Same objection ***.

THE COURT:  That would be sustained.

\*\*\*

THE COURT: I will let him answer that question. That puts the burden on you [(plaintiff)] to bring him in.

A. [(by Brofman)]: Dr. Hall is certainly free to testify in any way he chooses \*\*\*."

After Brofman's testimony, defense counsel presented written motions for directed verdicts on the issues of consent and medical negligence. The trial court took the motions under advisement. Later, in the jury instruction conference, the following took place:

"THE COURT: Plaintiff's instruction No. 1 is instruction [IPI Civil (2006) No. 5.01], failure to call a witness. I take it you're referring to Jesse Hall?

MS. STEVENSON [(defendants' counsel)]: My objection is that the plaintiff shifted the burden of proof \*\*\* by putting in statements which defense did not put in. Therefore, the [IPI Civil (2006) No. 5.01] instruction as against the defendant only is improper because it was the plaintiff who made all of the issues about what this expert was going to say.

[Hall] is currently unavailable this afternoon because of surgical and other issues and I could not bring him in today, but I told you this morning that if that was the case, we were ready to proceed and close without him.

MR. BASILE: \*\*\* [B]ack in February of 2006[,] I sent a letter to defense counsel telling her that I wanted to call Dr. Hall as one of my witnesses. I also wanted to amend my [Rule 213 disclosures].

5

She sent me a letter *** indicating that [defendants had] not abandoned Dr. Hall and that they intended to call him in their case in chief.

The deposition of Dr. Hall in various parts states that Dr. Brofman violated the standard of care. Even until now, and the Court is aware, defense counsel has indicated that Jesse Hall would be here to testify.

* * *

THE COURT: If you [(plaintiff's counsel)] had stopped with violating the standard of care, you would have been within appropriate bounds for cross-examination ***. I would have allowed that without any question and may very well have given this instruction.

However, when you indicated to that jury that [the] doctor would testify, you then brought it upon yourself to produce that doctor to testify. ***

***

*** Both parties had an obligation to produce the doctor, nobody produced him. Therefore, the Court will not give the instruction, and the Court will strike references to what Dr. Jesse Hall may have testified to.

* * *

MR. BASILE [(plaintiff's counsel)]: So the record is clear also, the witness at this point has not been abandoned by the defense counsel, and I would at this time request an opportunity to call him in. *** We would ask that we could reopen our case and call him as another witness or a rebuttal witness.

THE COURT: If you issued a subpoena, you could have brought him in.

MS. STEVENSON: He hasn't issued a subpoena .

MR. BASILE: I couldn't. *** [Defense counsel] said [defendants were] not abandoning [Hall], he's still under [defendants'] control. I can't issue a subpoena today because [defense counsel] still hasn't abandoned him as far as the record goes.

At this point, if [defense counsel is] going to stipulate for the record she's abandoned him, I'd like the opportunity to call him in as a rebuttal witness.

MS. STEVENSON: Your honor, I haven't abandoned him, he's not available. I have a right to make a legal determination whether to proceed with this case as is or try to continue the case when [Hall] is available. ***

***

MR. BASILE: I would ask that we have a short continuance and see if we can get him in here tomorrow morning ***.

THE COURT: I have no reason to continue this further. I'm going to proceed at this time.

*** The instruction [5.01] is refused."

In closing arguments, plaintiff's counsel said Brofman's conduct caused serious injury to Lisowski. Counsel argued that defendants would try to trivialize the injury by focusing on Lisowski's other health problems. Plaintiff's counsel said: "[Lisowski] almost died twice in the hospital." He argued that the main issue was whether Brofman inserted the chest tube

7

negligently, not Lisowski's medical history. "[F]rom the beginning I told you we are not denying that [Lisowski] had congestive heart failure [and] noninsulin dependent diabetes," counsel said.

Defense counsel said in closing arguments that Lisowski died of congestive heart failure. As noted, Lisowski died of ventricular fibrillation but it is undisputed that he suffered from congestive heart failure before his death. Defense counsel argued that plaintiff's exaggeration of the seriousness of her husband's condition after the procedure was contradicted by the fact that family members were not called to Lisowski's bedside after the procedure and that the couple's son Edward did not testify at the trial.

The trial court instructed the jury that it was plaintiff's burden to prove defendants acted or failed to act in one of the ways claimed by plaintiff, that plaintiff was injured and that defendants' negligence proximately caused plaintiff's injury. The trial judge then told the jury: "[T]here was some evidence concerning a Dr. Jesse Hall. You are to disregard any reference of what was alleged concerning Dr. Jesse Hall."

The jury returned a verdict in defendants' favor.

Plaintiff moved for a new trial. Defendants in their response to plaintiff's motion said Hall's medical practice and travel out-of-town prevented him from appearing during the trial. Defendants said Hall would not have been available until two days after the trial ended.

After a hearing, the trial court granted plaintiff's motion for a new trial in the following written order, stating in its entirety:

"This matter coming to be heard on plaintiff's motion to vacate judgment and for new trial; the judge having read the briefs [and] heard argument, [i]t is

8

hereby ordered: (1) The judgment of May 9, 2006, is hereby vacated and the matter is set for [retrial] on March 21, 2007 at 9:30 in [Room] 2407 [without] further notice."

There was no written statement of the reasons for the ruling. See Turner v. Commonwealth Edison Co., 35 Ill. App. 3d 331, 333, 341 N.E.2d 488 (1976) ("When a new trial is granted a concise statement of findings or reasons should be incorporated into the record by the trial judge so that the reviewing court may know what prompted his action"). Nor can we ascertain the judge's reasons from a transcript of the hearing because there is none in the record.

As a threshold matter, plaintiff argues that we must affirm the order for a new trial because defendants violated Supreme Court Rule 323(a) (210 Ill. 2d R. 323(a)) in failing to provide a complete record. Plaintiff notes the absence of: (1) Hall's deposition; (2) the letters between the attorneys on defendants' refusal to abandon Hall; and (3) a transcript of the hearing on plaintiff's motion for a new trial.

Rule 323(a) provides: "The report of proceedings shall include all the evidence pertinent to the issues on appeal." 210 Ill. 2d R. 323(a). "Absent a sufficient record, the reviewing court presumes that the trial court conformed to the law and that its rulings were supported by the evidence." Adams v. Sarah Bush Lincoln Health Center, 369 Ill. App. 3d 988, 997, 874 N.E.2d 100 (2007). In general, the burden is on the appellant to present a satisfactory record. Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984). But a reviewing court may consider an appeal despite deficiencies in the record where the trial transcripts sufficiently convey the conduct at issue. Gonzalez v. Nissan North America, Inc., 369 Ill. App. 3d 460, 463, 860 N.E.2d

9

386 (2006). Doubts arising from the incompleteness of the record will be resolved in favor of the appellee. Foutch, 99 Ill. 2d at 392.

Here, the material pertinent to this appeal appears in the trial transcript. Plaintiff does not claim this transcript is incomplete. The transcript, with plaintiff's motion for a new trial, provides a sufficient record for review. See Senderak v. Mitchell, 282 Ill. App. 3d 881, 886, 668 N.E.2d 1041 (1996) (where the court does not state its reasons for granting a new trial, we look to the posttrial motions and assume the errors stated there prompted the order). Accord Rodriguez v. Chicago Transit Authority, 58 Ill. App. 2d 150, 155, 206 N.E.2d 828 (1965). See also Berry v. G. D. Searle & Co., 56 Ill. 2d 548, 556, 309 N.E.2d 550 (1974) (objections considered on review are "delimit[ed]" to those in the complaint).

Defendants first argue that the trial court abused its discretion in granting a new trial because the jury's verdict was not against the manifest weight of the evidence. Plaintiff argues that this court must defer to the trial court because the judge there was in a better position to observe the trial and recognize errors.

A new trial is proper if the verdict was against the manifest weight of the evidence. Maple v. Gustafson, 151 Ill. 2d 445, 454, 603 N.E.2d 508 (1992). A verdict is against the manifest weight of the evidence where the opposite conclusion was evident or the verdict was unreasonable or arbitrary and not based on the evidence. Maple, 151 Ill. 2d at 454. The jury's role is: (1) to resolve conflicts in the evidence; (2) to determine the credibility of witnesses; and (3) to decide the weight to be given each witness's testimony. Maple, 151 Ill. 2d at 452. After the jury reaches a verdict, the trial court must not reweigh the evidence or interfere with a verdict

merely because another result was possible or reasonable. Maple, 151 Ill. 2d at 452. Nor can this court reach its own conclusions on questions of fact where the trial was fair and the evidence did not favor either side. Maple, 151 Ill. 2d at 452-53. We will reverse an order for a new trial only if the trial court abused its discretion. Maple, 151 Ill. 2d at 454. A court abuses its discretion when it grants a new trial despite sufficient evidence to support the jury's verdict. Maple, 151 Ill. 2d at 456.

To establish medical malpractice, the plaintiff must show a deviation from a standard of care and a causal connection between the deviation and the injury. Simmons v. Garces, 198 Ill. 2d 541, 556, 763 N.E.2d 720 (2002). "[P]roximate cause must be established by expert testimony to a reasonable degree of medical certainty." Simmons, 198 Ill. 2d at 556. Where the medical expert testimony of the causal connection is contingent, speculative or merely possible, proximate cause is not established. Knauerhaze v. Nelson, 361 Ill. App. 3d 538, 549, 836 N.E.2d 640 (2005).

Here, the opinions of Warren and Brofman conflicted. Brofman, who testified over a two-day period as plaintiff's adverse witness, on direct examination by defendants and on cross-examination by plaintiff denied deviating from the standard of care of a pulmonologist performing a thoracentesis. Warren, a thoracic surgeon and not a pulmonologist, said his review of documents showed Brofman deviated from a pulmonologist's standard of care. It was the jury's role to resolve these conflicts, assess the credibility of Brofman and Warren and determine the weight to be given to each doctor's testimony. See Maple, 151 Ill. 2d at 452. The jury resolved these matter in defendants' favor. This conclusion was not arbitrary or unreasonable in

11

light of the conflicting evidence before the jury. A new trial was not justified on the grounds that the jury's conclusion was against the manifest weight of the evidence. See Maple, 151 Ill. 2d at 454.

We turn to the question of whether plaintiff was entitled to a new trial because trial court errors rendered the trial unfair. Plaintiff cites Tonarelli v. Gibbons, 121 Ill. App. 3d 1042, 1048, 460 N.E.2d 464 (1984), to argue that a new trial is required where the accumulation of evidentiary and instructional errors causes prejudice.

A new trial should be granted where the trial court's rulings in the course of the trial result in prejudicial error. Herington v. Illinois Power Co., 79 Ill. App. 2d 431, 438, 223 N.E.2d 729 (1967). A reviewing court should reverse an order for a new trial and reinstate the jury's verdict where errors were insubstantial, not prejudicial to the movant or insufficient to justify a new trial. Lagoni v. Holiday Inn Midway, 262 Ill. App. 3d 1020, 1038, 635 N.E.2d 622 (1994). "The mere fact that multiple errors are present does not in and of itself result in prejudicial error." First National Bank of La Grange v. Glen Oaks Hospital & Medical Center, 357 Ill. App. 3d 828, 844, 829 N.E.2d 378 (2005).

We review in turn the errors raised in plaintiff's posttrial motion and on appeal. Each question is subject to its own standard of review. Redmond v. Socha, 216 Ill. 2d 622, 633, 837 N.E.2d 883 (2005). We first consider whether the trial court erred in denying plaintiff's request for IPI Civil (2006) No. 5.01 as to Hall. This is the "missing-witness" or "adverse-inference" instruction. Wilkerson v. Pittsburgh Corning Corp., 276 Ill. App. 3d 1023, 1026, 659 N.E.2d 979 (1995). The instruction "allows the jury to infer that any evidence not offered but within the

12

control of a party is adverse to that party." First National Bank of La Grange v. Lowrey, 375 Ill. App. 3d 181, 210, 872 N.E.2d 447 (2007). The decision to grant or deny a party's request for this instruction rests with the sound discretion of the court. Schaffner v. Chicago & North Western Transportation Co.,129 Ill. 2d 1, 22, 541 N.E.2d 643 (1989).

Defendants argue that IPI Civil (2006) No. 5.01 was properly denied because Hall was equally available to both parties. Defendants claim they had a reasonable excuse for Hall's unavailability—his surgery schedule and travel plans. Defendants rely on Chiricosta v. Winthrop-Breon, 263 Ill. App. 3d 132, 159, 635 N.E.2d 1019 (1994), for the proposition that a party's request for an instruction should be granted only if she clearly is entitled to it. Defendants cite Bulger v. Chicago Transit Authority, 345 Ill. App. 3d 103, 121, 801 N.E.2d 1127 (2003), to argue that a new trial on the basis of jury instructions is appropriate only where "a party's right to a fair trial has been seriously prejudiced." Bulger, 345 Ill. App. 3d at 121.

Plaintiff argues she was entitled to the missing-witness instruction under the criteria established by our supreme court in Schaffner, 129 Ill. 2d 1, 541 N.E.2d 643. This instruction should be given when: (1) the missing witness was under the control of the party adversely affected by the instruction; (2) the witness could have been produced by reasonable diligence; (3) the witness was not equally available to the party who requested the instruction; (4) a reasonably prudent person would have produced the witness if he or she believed the testimony would be favorable; and (5) there was no reasonable excuse for failing to produce the witness. Schaffner,129 Ill. 2d at 22.

Here, the trial court refused the missing-witness instruction based on its conclusion:

13

"Both parties had an obligation to produce the doctor, nobody produced him."  An analysis of the Schaffner factors shows Hall was under defendants' control to the extent that they had named him as a controlled expert witness, but plaintiff, with reasonable diligence, could have obtained Hall's appearance by subpoena under Rule 237 (166 Ill. 2d R. 237).  This rule provides that the missing witness of one party can be compelled by another party to appear and testify at trial.  Section (a) of the rule provides: "Any witness shall respond to any lawful subpoena of which he or she has actual knowledge ***."  166 Ill. 2d R. 237(a).  A subpoena is an order of the court, not an overture by a party, and it requires compliance.  Camco, Inc. v. Lowery, 362 Ill. App. 3d 421, 429, 839 N.E.2d 655 (2005), citing People ex rel. Fisher v. Carey, 77 Ill. 2d 259, 265, 396 N.E.2d 17 (1979).  Rule 237 can be used by an injured plaintiff to produce a witness at trial even if the witness had been within the defendant's control and disclosed by the defendant in discovery.  Collier v. Avis Rent A Car System, Inc., 248 Ill. App. 3d 1088, 1100, 618 N.E.2d 771 (1993).

Here, a reasonably prudent plaintiff would have produced Hall by subpoena if she believed Hall would discredit Brofman's defense and support her complaint.  Whatever Hall said in his deposition, both parties knew it in 2002.  Plaintiff could have mounted the effort to subpoena Hall in the four years between his deposition and this trial.  Although defendants were obligated to produce Hall, they presented a plausible excuse for his absence on the day his testimony was expected and notified the court in advance that they were prepared to close without Hall, if necessary.  Based on the criteria stated in Schaffner, the trial court did not abuse its discretion in refusing to give the missing-witness instruction.

14

Plaintiff relies on <u>Bargman v. Economics Laboratory, Inc.</u>, 181 Ill. App. 3d 1023, 537 N.E.2d 938 (1989), and <u>Ciborowski v. Philip Dressler & Associates</u>, 110 Ill. App. 3d 981, 443 N.E.2d 618 (1982), to argue that the court's refusal to give the missing-witness instruction, among other errors, warranted a new trial.

In <u>Bargman</u>, the trial court erred in refusing the missing-witness instruction where the witness was in the defendant's control and no reasonable excuse was given for failing to call him. <u>Bargman</u>, 181 Ill. App. 3d at 1028. In <u>Ciborowski</u>, the defendant's failure to call a witness under its control warranted the missing-witness instruction despite the fact that the plaintiff could have subpoenaed the witness. The court relied on C. McCormick, Evidence §249, at 533-34 (1954): " ' "When it would be natural under the circumstances for a party to call a particular witness *** his adversary may use this failure as the basis for invoking an adverse inference ***." ' " <u>Ciborowski</u>, 110 Ill. App. 3d at 986, quoting <u>Biel v. Wolff</u>, 126 Ill. App. 2d 209, 223, 261 N.E.2d 474 (1970).

In both <u>Bargman</u> and <u>Ciborowski</u>, the court found that the propriety of the missing-witness instruction depends on the circumstances at hand. <u>Bargman</u>, 181 Ill. App. 3d at 1028; <u>Ciborowski</u>, 110 Ill. App. 3d at 986. Here, the circumstances differ from those in <u>Bargman</u> and <u>Ciborowski</u>. Defendants here consistently maintained that Hall was in their control but unavailable to testify at the trial because of his surgery schedule and travel plans. Plaintiff did not attempt to rebut this excuse.

The next issue also pertains to jury instructions. Defendants argue that the trial court correctly instructed the jury to disregard plaintiff's prejudicial references to Hall in her opening

15

1-07-0076

statement and cross-examination of Brofman. Plaintiff responds that defendants cannot complain on appeal of plaintiff's references to Hall because they failed to object at trial.

To preserve an issue for appeal, a party must object at trial and raise the issue in a posttrial motion. People v. Enoch, 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124 (1988). An issue is preserved for review where it was included in a response to an opponent's posttrial motion. Vaughn v. Speaker, 156 Ill. App. 3d 962, 966, 509 N.E.2d 1084 (1987). The transcript here shows defense counsel objected during cross-examination when plaintiff's counsel asked Brofman if he "would have a problem" when Hall testified to his deviation from the standard of care. Defendants again raised the issue of plaintiff's prejudicial references to Hall in their written response to plaintiff's motion for a new trial. Defendants' claim that plaintiff made prejudicial statements was preserved for review.

We believe that plaintiff's conduct in revealing Hall's alleged testimony to the jury in her opening statement and cross-examination of Brofman further supports the conclusion that she is not entitled to a new trial on the basis of jury instructions. A defendant is entitled to a trial free from a plaintiff's improper remarks that draw attention to the defendant's failure to call witnesses or otherwise attempt to shift the burden of proof to the defendant. People v. Thomas 121 Ill. App. 3d 883, 891, 460 N.E.2d 402 (1984). The missing-witness instruction should not be given where, as here, prejudicial references to the missing witness were made during the trial. Wilkerson, 276 Ill. App. 3d at 1030. Questions that presume facts not in evidence are prejudicial because the jury may assume the witness, if called, would have admitted the alleged facts. Bartimus v. Paxton Community Hospital, 120 Ill. App. 3d 1060, 1064, 458 N.E.2d 1072 (1983).

16

Where a party has injected error into the proceedings it is "manifestly unfair" for that party to be granted a new trial. See McMath v. Katholi, 191 Ill. 2d 251, 255, 730 N.E.2d 1 (2000). For all of these reasons, plaintiff's references to Hall militate against the missing-witness jury instruction.

We now turn to the last question pertaining to jury instructions—whether the trial court erred in telling the jury to disregard plaintiff's references to Hall. Defendants claim the instruction was needed to cure plaintiff's introduction of inadmissible evidence, including: (1) hearsay evidence that Hall said Brofman breached the standard of care; (2) cross-examination of Brofman that exceeded the scope of direct; and (3) improper impeachment with an impermissible hypothetical question.

As noted, instructing the jury rests within the sound discretion of the court. Schaffner, 129 Ill. 2d at 22. The court has a duty to instruct the jury to disregard improper evidence, such as hearsay. People v. Rice, 234 Ill. App. 3d 12, 22, 599 N.E.2d 1253 (1992). In general, cross-examination cannot exceed the scope of direct examination. Anderson v. Human Rights Comm'n, 314 Ill. App. 3d 35, 44, 731 N.E.2d 371 (2000). Although a party is not entitled to present her theory of the case through cross-examination (Anderson, 314 Ill. App. 3d at 44), hypothetical questions are permissible cross-examination (Leonardi v. Loyola University of Chicago, 168 Ill. 2d 83, 96, 658 N.E.2d 450 (1995)). The cross-examining party may use facts in evidence that conform to her theory of the case. Leonardi, 168 Ill. 2d at 96. "It is within the sound discretion of the trial court to allow a hypothetical question, although the supporting evidence has not already been adduced, if the interrogating counsel gives assurance it will be

17

produced and connected later." Leonardi, 168 Ill. 2d at 96. "Evidence admitted upon an assurance that it will later be connected up should be excluded upon failure to establish the connection." Leonardi, 168 Ill. 2d at 96.

Here, the trial court properly instructed the jury to disregard plaintiff's reference to Hall on cross-examination of Brofman. Plaintiff's question, "when Dr. Hall comes in here later today and tells us that you violated the standard of care," was not stated as a hypothetical but as a fact. As such, the question was improper as hearsay and as cross-examination beyond the scope of direct examination. But even if the question were a proper hypothetical, the trial court correctly instructed the jury to disregard the references after plaintiff failed to produce Hall and connect the hypothetical to admissible evidence. See Leonardi, 168 Ill. 2d at 96.

The next issue is whether the trial court erred in barring plaintiff from reopening her case or calling Hall as a rebuttal witness. A court's ruling on a party's request to reopen her case to present additional evidence will not be disturbed absent an abuse of discretion. In re Estate of Doyle, 362 Ill. App. 3d 293, 301-02, 838 N.E.2d 355 (2005). A court abuses its discretion where its decision is arbitrary, fanciful or unreasonable, or when no reasonable person would take the same view. People v. Illgen, 145 Ill. 2d 353, 364, 583 N.E.2d 515 (1991).

Plaintiff argues that the trial court should have allowed her to reopen her case because defendants' unfair trial strategy prevented the jury from hearing Hall's damaging testimony. She cites Hollembaek v. Dominick's Finer Foods, Inc., 137 Ill. App. 3d 773, 778-79, 484 N.E.2d 1237 (1985). There, the trial court did not err in allowing the plaintiff to reopen her case for the limited purpose of clarifying the record on "an evidentiary matter of utmost importance in

plaintiff's case." Hollembaek,137 Ill. App. 3d at 778. The court noted the factors to be considered in deciding whether to reopen proofs. Hollembaek, 137 Ill. App. 3d at 778, citing Crothers v. La Salle Institute, 68 Ill. 2d 399, 370 N.E.2d 213 (1977). "[A] trial court should take into account various factors, including the existence of an excuse for the failure to introduce the evidence at trial, *e.g.*, whether it was inadvertence or calculated risk; whether the adverse party will be surprised or unfairly prejudiced by the new evidence; whether the evidence is of utmost importance to the movant's case; and whether there are the most cogent reasons to deny the request." Hollembaek,137 Ill. App. 3d at 778.

The factors stated in Hollembaek support the trial court's denial of plaintiff's request here to reopen her case. Plaintiff offered no reasonable excuse for failing to subpoena Hall, other than her contention that Hall remained under defendants' control. As we have said, a party can subpoena a witness under the opposition's control under Rule 237(a) (166 Ill. 2d R. 237(a)). See Camco, 362 Ill. App. 3d at 429; Collier, 248 Ill. App. 3d at 1100. It was plaintiff's burden to present evidence proving Brofman's negligence, not defendants' burden to disprove it. See Blue v. Environmental Engineering, Inc., 215 Ill. 2d 78, 98, 828 N.E.2d 1128 (2005) ("the burden of proof remains on the plaintiff throughout the proceedings to prove all of the elements of negligence"). The trial court did not abuse its discretion in denying plaintiff's request to reopen proofs. See Illgen, 145 Ill. 2d at 364.

The next issue is whether the trial court erred in allowing defense counsel's closing comments on: (1) Lisowski's son Edward's failure to testify at the trial; and (2) congestive heart failure as Lisowski's cause of death when the actual cause was ventricular fibrillation.

19

Defendants claim their arguments were proper when considered in context, citing People v. Kliner, 185 Ill. 2d 81, 157, 729 N.E.2d 20 (2000) (a reviewing court must examine closing remarks in the context of the entire proceeding). They argue that plaintiff misconstrues the comment, "we didn't hear from the family members." Defendants maintain this comment did not refer to Edward's failure to testify but to their theory that plaintiff was exaggerating the seriousness of Lisowski's condition as shown by the fact that family members were not called to his bedside after the procedure.

"The scope of closing arguments is within the trial judge's sound discretion, and an argument must be prejudicial before a reviewing court will reverse on this basis." Velarde v. Illinois Central R.R. Co., 354 Ill. App. 3d 523, 543, 820 N.E.2d 37 (2004). An attorney may respond to comments by opposing counsel that clearly invite a response. Kliner, 185 Ill. 2d at 154. See Tzystuck v. Chicago Transit Authority, 124 Ill. 2d 226, 243, 529 N.E.2d 525 (1988) (a new trial is warranted only where the error affected the outcome). A minor misstatement in a closing argument should not be regarded as error. People v. Alexander, 127 Ill. App. 3d 1007, 1016, 470 N.E.2d 1071 (1984).

Here, defense counsel's challenge to the seriousness of Lisowski's condition was a permissible response to plaintiff's statement that "[Lisowski] almost died twice in the hospital." Defense counsel's misstatement that Lisowski died of one type of heart problem when in fact he died of a different heart problem was minor and harmless to plaintiff.

The next issue is whether the trial court erred in failing to direct a verdict on the question of informed consent. Plaintiff argues that the jury's verdict was against the manifest weight of

the evidence. She claims the evidence shows Lisowski most likely would not have consented because he hated hospitals, he was sedated when he allegedly consented and Brofman admitted he "did not explicitly indicate" to Lisowski that a liver laceration and diaphragm puncture were risks.

A verdict should be directed "only in those cases in which all of the evidence, *** in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). The standard of review for the denial of a motion for directed verdict is *de novo*. Evans v. Shannon, 201 Ill. 2d 424, 427, 776 N.E.2d 1184 (2002).

"In an informed consent action, a plaintiff must point to significant undisclosed information relating to the treatment which would have altered her decision to undergo it." Schiff v. Friberg, 331 Ill. App. 3d 643, 657, 771 N.E.2d 517 (2002). "[I]t is for the jury to decide if any alleged undisclosed information would have altered the plaintiff's decision." Schiff, 331 Ill. App. 3d at 657. "If the disclosure would not have changed the decision of a reasonable person in the position of the plaintiff, there is no causal connection between nondisclosure and her postoperative condition; if, however, disclosure would have caused a reasonable person in the position of the patient to refuse the surgery or therapy, a causal connection is shown." Schiff, 331 Ill. App. 3d at 657. See also Coryell v. Smith, 274 Ill. App. 3d 543, 550, 653 N.E.2d 1317 (1995) (the question of proximate cause in an informed consent context requires the jury to use their knowledge, experience and common sense to decide whether, after proper disclosure, a prudent person would have proceeded with the proposed treatment).

Both parties claim <u>Ziegert v. South Chicago Community Hospital</u>, 99 Ill. App. 3d 83, 92, 425 N.E.2d 450 (1981), supports their positions. There, the plaintiff alleged medical malpractice against a doctor and hospital after her surgery. <u>Ziegert</u>, 99 Ill. App. 3d at 84. The plaintiff admitted on cross-examination that she read and signed a surgery consent form. <u>Ziegert</u>, 99 Ill. App. 3d at 90. The jury returned a general verdict for the defendant. <u>Ziegert</u>, 99 Ill. App. 3d at 84. The plaintiff appealed, arguing that she was entitled to a directed verdict or a judgment notwithstanding the verdict on the question of informed consent. <u>Ziegert</u>, 99 Ill. App. 3d at 92. Noting the absence of expert testimony that the failure to warn a surgery patient of a possible pulmonary embolism was a deviation from the standard of care, this court adopted the standard of proof of informed consent in <u>Green v. Hussey</u>, 127 Ill. App. 2d 174, 184-85, 262 N.E.2d 156 (1970):

> " '[T]o establish liability for defendants' failure to inform plaintiff of the foreseeable risks or results involved in [the treatment] and available alternatives, if any, plaintiff had the burden of proving by expert medical evidence that the reasonable medical practitioner of the same school, in the same or similar circumstances, would have told the patient of such risks, or that the disclosures as made by the defendants did not meet the standard of what a reasonable medical practitioner would have disclosed under the same or similar circumstances. [Citation.] Also, plaintiff had the burden of proving by expert medical testimony that such failure was the proximate cause of her damage.' " <u>Ziegert</u>, 99 Ill. App. 3d at 92.

22

Plaintiff argues that Brofman's statement—"[i]t is quite likely that I did not explicitly indicate that those were the risks"—is proof under Ziegert that Brofman failed to conform to the professional standard for disclosure of risks. Defendants maintain plaintiff did not prove Brofman failed to obtain informed consent where Brofman merely acknowledged that additional words could have been used. Defendants argue that because it was the province of the jury to weigh the evidence, it would have been error for the court to direct a verdict in plaintiff's favor on the issue of informed consent.

Here, Brofman testified he did not explicitly mention the possibility of injuring the liver or diaphragm but he did tell Lisowksi there was a risk that he could "hit something I don't want to hit and cause bleeding." Brofman testified that Lisowski was alert and coherent when he consented to the procedure. Warren testified that it was a deviation from the standard of care to obtain consent while Lisowski was sedated, but he admitted he did not know Lisowski's mental state at the time consent was given. Where, as here, there is conflicting evidence, it is the province of the jury to resolve the conflicts. See Maple, 151 Ill. 2d at 452. The jury's conclusion for defendants on the issue of informed consent was not against the manifest weight of the evidence. See Maple, 151 Ill. 2d at 454. The trial court did not err in refusing to direct a verdict on informed consent.

The final question is whether the trial court erred in barring Warren's opinions that Lisowski was depressed and suicidal after the procedure. The trial court determined that plaintiff had not disclosed this information in her answers to defendants' interrogatories under Supreme Court Rule 213(f)(3) (210 Ill. 2d R. 213(f)(3)). This rule requires the disclosure of the content

and bases of controlled experts' conclusions and opinions. 210 Ill. 2d R. 213(f)(3). Plaintiff argues that because she disclosed that Warren had reviewed the deposition of Dr. Emelita Co, Lisowski's treating physician from 1991 until shortly before his death, and that Co's deposition mentioned his depression and suicidal thoughts, that Warren's testimony that Lisowski was depressed after the procedure at issue would be a logical corollary of Warren's disclosed opinions. Plaintiff cites Barton v. Chicago & North Western Transportation Co., 325 Ill. App. 3d 1005, 1039, 757 N.E.2d 533 (2001), for the proposition that a witness may elaborate on a disclosed opinion as long as the testimony states logical corollaries to the opinion, rather than new reasons for it.

Defendants argue that nowhere in plaintiff's Rule 213 answers does the word "depression" or "suicide" appear. They deny that the phrase "and all of the other problems that resulted" placed them on notice that Warren would state that Lisowski became depressed and suicidal after the procedure.

Supreme Court Rule 213(f)(3) requires a party to provide information about a controlled expert witness, including: "(i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case." 210 Ill. 2d R. 213(f)(3). "The Rule 213 disclosure requirements are mandatory and subject to strict compliance by the parties." Sullivan v. Edward Hospital, 209 Ill. 2d 100, 109, 806 N.E.2d 645 (2004). Disclosures must be specific. Sullivan, 209 Ill. 2d at 109.

Here, plaintiff admits that the topics "depression" and "suicide" were never mentioned in

24

her disclosures on Warren. The catchall phase "all of the other problems" is not specific enough to meet the strict requirements of Rule 213 under Sullivan. The trial court did not abuse its discretion in barring Warren from testifying that Lisowski became suicidal and depressed.

We conclude that the trial court erred in granting plaintiff's motion for a new trial for these reasons: (1) the jury's verdict on the claim of negligence was not against the manifest weight of the evidence; (2) the jury's verdict on informed consent was not against the manifest weight of the evidence; and (3) the trial court did not err during the trial in its rulings on: (a) jury instructions; (b) closing arguments; (c) plaintiff's request to reopen the case; (d) plaintiff's motion for a directed verdict; and (e) Dr. Warren's undisclosed opinions. This conclusion defeats plaintiff's claim that cumulative errors warranted a new trial. See People v. Caffey, 205 Ill. 2d 52, 118, 797 N.E.2d 1163 (2001) (where a reviewing court finds that no error occurred, a party is not entitled to a new trial on the basis of cumulative error).

We reverse the judgment of the trial court for a new trial and order the jury verdict reinstated.

Reversed and remanded with directions.

WOLFSON and GARCIA, JJ., concur.